**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KORRY PEARL, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) **Case No.** |
| Plaintiff, | ) ) ) |
| v. | ) **CLASS ACTION COMPLAINT** ) ) |
| VODAFONE GROUP PLC, VITTORIO A. COLAO and NICHOLAS JONATHAN READ, | ) **JURY TRIAL DEMANDED** ) ) ) ) |
| Defendants. | ) ) |

## CLASS ACTION COMPLAINT

Plaintiff Korry Pearl ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Vodafone Group plc ("Vodafone" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Vodafone's American

Depositary Receipts ("ADRs") between February 11, 2015 and January 10, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Vodafone Group PLC is a mobile telecommunications company providing a range of services, including voice and data communications. The Company operates in Continental Europe, the United Kingdom, the United States, Asia Pacific, Africa, and the Middle East through its subsidiaries, associates, and investments.

3.      Founded in 1984, the Company is headquartered in Newbury, the United Kingdom, and its ADRs trade on the NASDAQ Global Select market ("NASDAQ") under the ticker symbol "VOD."

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Vodafone had contravened Australian law by permitting customers to purchase pre-paid mobile phones without first verifying their identities; and (ii) as a result of the foregoing, Vodafone shares traded at artificially inflated prices during the Class Period, and class members suffered significant losses and damages.

5.      On January 10, 2018, post-market, the Australian Communications and Media Authority ("ACMA") announced that an investigation into Vodafone Australia ("VHA") revealed that VHA had contravened Australian law by permitting customers to purchase pre-paid mobile phones without first verifying their identities.  Specifically, an update to VHA's website

allowed customers "to select that their identity had been verified in a store and then proceed to activate their service through use of the website" without confirming that the customers' identities had in fact been verified, as required by law. VHA has entered into an enforceable undertaking with ACMA to ensure that its identity checks are up to date.

6.      On this news, Vodafone's American Depositary Receipt price fell $0.21 or 0.66%, to close at $31.44 per share on January 11, 2018.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

10.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). Vodafone's ADRs trade on the NASDAQ, located within this Judicial District.

11.      In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Vodafone securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Vodafone is headquartered in England, with principal executive offices located at Vodafone House, The Connection, Newbury – Berkshire, RG 14 2FN, England and its U.S. headquarters are located at 560 Lexington Avenue, 9th Floor, New York, New York 10022. Vodafone's ADRs trade on the NASDAQ under the ticker symbol "VOD."

14.     Defendant Vittorio A. Colao ("Colao") has served at all relevant times as the Company's Chief Executive Officer ("CEO") and Executive Director.

15.     Defendant Nicholas Jonathan Read ("Read") has served at all relevant times as the Company's Chief Financial Officer ("CFO") and Executive Director.

16.     The defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

17.     The Individual Defendants possessed the power and authority to control the contents of Vodafone's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.    Vodafone is one of the world's largest telecommunications companies and provides a range of services including voice, messaging, data and fixed communications. The Company has mobile operations in 26 countries, partners with mobile networks in 50 more, and fixed broadband operations in 19 markets.

*Telecommunications*
*(Service Provider- Identify Checks for Prepaid Mobile Carriage Services)*
*Determination 2013*

19.    Under section 2.3 of the Australian Telecommunications (Service Provider - Identity Checks for Prepaid Mobile Carriage Services) Determination 2013 ("the Determination"), mobile service providers are required to obtain and verify a customer's identification ("ID") when they purchase or activate a mobile prepaid service. The Determination was made in November 2013 by the ACMA under the Telecommunications Act 1997 (the "Act").

20.    Under section 101 (1) of the Act, service providers must comply with service provider rules that apply to the provider.

21.    Under subsection 313(3) of the Act, carriage service providers must provide agencies with such help as is reasonably necessary for the following purposes: (a) enforcing the criminal law and laws imposing pecuniary penalties; (b) assisting the enforcement of the criminal laws in force in a foreign country; (c) protecting the public revenue; and (d) safeguarding national security.

22.     Under Part 14 of the Act, the ACMA and carriage service providers must do their best to prevent or minimize the risk of telecommunications networks and facilities from being used in, or in relation to, the commission of offenses against the laws of the Commonwealth or the States or Territories.

*Law Enforcement Disclosure Reports*

23.     On June 6, 2014, Vodafone published the Vodafone Group Plc Sustainability Report ("2014 Sustainability Report") containing Vodafone's Law Enforcement Disclosure Report for the period April 1, 2013 to March 31, 2014 ("2013/2014 Disclosure Report") and its Legal Annexe ("2014 Legal Annexe"), which provides a detailed insight into the legal frameworks, governance principles and operating procedures associated with responding to demands for assistance from law enforcement and intelligence agencies across 29 countries.

**Materially False and Misleading Statements Issued During the Class Period**

24.     The Class Period begins on February 11, 2015, when Vodafone updated its 2014 Legal Annexe to the Company's 2013/2014 Disclosure Report ("2015 Legal Annexe"). Throughout the 2015 Legal Annexe, the Company made the following statements reaffirming previous disclosures:

Australia

In this report we provide an overview of some of the legal powers under the Commonwealth Law of Australia that government agencies have to order Vodafone's assistance with conducting real-time interception and the disclosure of data about Vodafone's customers.

Australia is a Federation containing three separate types of legislation: Commonwealth, State and Territory. This report focuses on the legal powers available under Commonwealth Law.

**1.     PROVISION OF REAL-TIME LAWFUL INTERCEPTION ASSISTANCE**

**Telecommunications Act 1997**

6

Carriers and carriage service providers ("carriers") (such as Vodafone) have legislative obligations under the Telecommunications Act 1997 ("TA") to provide assistance to law enforcement agencies and national security agencies with the interception of individual customer communications (live communications) where authorised.

Section 313(3) of the TA requires carriers to give the authorities such help as is reasonably necessary for the purposes of: (i) enforcing the criminal law and laws imposing pecuniary penalties; (ii) protecting the public revenue; and (iii) safeguarding national security.

* * *

Section 313(1) of the TA requires a carrier to do its best to prevent telecommunication networks and facilities from being used in, or in relation to, the commission of offences against the laws of the Commonwealth or the States and Territories. Examples of the kind of help law enforcement and national security agencies might request under section 313(3) TA include: (i) the provision of interception services; (ii) information from a carrier's information base, such as billing records and (iii) assistance in tracing a call.

25.     On May 19, 2015, Vodafone released its annual report for the fiscal year ended March 31, 2015 ("2015 Annual Report"). The 2015 Annual Report was also filed as Form 20-F with the SEC on June 8, 2015 and was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants. In the 2015 Annual Report, the Company stated in relevant part:

**Privacy and human rights**

The amount of data and personal information transmitted over our networks continues to increase. Our commitment to protecting that information and respecting our customers' right to privacy and freedom of expression remains critical in retaining their trust.

***We are one of the first communications operators in the world to provide a country-by-country analysis of demands received for access to our customers' data by law enforcement authorities, through the publication of our Law Enforcement Disclosure report.***

***This report explains our principles and approach, as well as the policies and processes we follow when responding to demands from government agencies and authorities.*** It also sets out the framework within which we believe governments should act.

(Emphasis added.)

26.     On July 15, 2015, Vodafone published an update to the 2013/2014 Disclosure Report ("2015 Disclosure Report"). In the 2015 Disclosure Report, the Company stated in relevant part:

**Law Enforcement Disclosure Report 2015**

**This is our second annual transparency report which offers a detailed insight into the legal frameworks, governance principles and operating policies and procedures associated with responding to demands for assistance from law enforcement and intelligence agencies across 28 countries.**

**We have retained much of the explanatory text used in the 2014 report which sets out our principles and practices in what remains a significant area of public debate and concern.**

\* \* \*

**Complex, controversial – and constantly changing**

Our customers have a right to privacy which is enshrined in international human rights law and standards, and enacted through national laws. Respecting that right is one of our highest priorities: it is integral to the Vodafone Code of Conduct which everyone who works for us has to follow at all times.

***In every country in which we operate, we also have to abide by the laws of those countries which require us to disclose information about our customers to law enforcement agencies or other government authorities, or to block or restrict access to certain services, content or networks.*** Those laws are designed to protect national security and public safety or to prevent or investigate crime and terrorism, and the agencies and authorities that invoke those laws insist that the information demanded from communications operators such as Vodafone is essential to their work.

***Refusal to comply with a country's laws is not an option***. If we do not comply with a lawful demand for assistance, governments can remove our licence to operate, preventing us from providing services to our customers.

(Emphasis added.)

27.     On May 17, 2016, Vodafone released its annual report for the fiscal year ended March 31, 2016 ("2016 Annual Report"). The 2016 Annual Report was also filed as Form 20-F with the SEC on June 10, 2016 and was signed and certified under the Sarbanes Oxley Act of

2002 by the Individual Defendants. With regards to risks and compliance, the Company referred investors to the 2015 Disclosure Report.

28.    On May 31, 2017, Vodafone published an update to the 2015 Disclosure Report ("2017 Disclosure Report"). In the 2017 Disclosure Report the Company stated in relevant part:

**What we are publishing and why**

**This is our third Law Enforcement Disclosure Statement in which we seek to offer some insights into the legal frameworks, governance principles and operating policies and procedures associated with responding to demands for assistance from law enforcement and intelligence agencies.**

We continue to retain much of the explanatory text used when we published our first Law Enforcement Disclosure Report in July 2014 as our core principles and practices are unchanged. In addition, our explanation of the policies and processes we follow when responding to demands for assistance from agencies and authorities remains relevant and is repeated here.

The statistical information in this Statement covers the period from 1 April 2015 to 31 March 2016 with some additional commentary on events after that period. It encompasses the activities of our local market operating companies in 26 countries (including our joint ventures and associates) plus two other countries in which we have received a lawful demand for assistance from a law enforcement agency or government authority.

* * *

**How we work with law enforcement agencies and government authorities**

**At Vodafone, our customers' privacy is paramount. We have strict governance controls in place across all of our businesses worldwide to ensure the protection of our customers' data and communications. We are committed to following the UN Guiding Principles on Business and Human Rights.**

***As we explain in our Privacy and Law Enforcement Principles, Vodafone is committed to meeting its obligations to respond to agencies' and authorities' lawful demands*** but will not go beyond what is mandated in law (other than under specific and limited circumstances, again outlined below). Abiding by those principles can be challenging in certain countries at certain times.

* * *

**Mandatory compliance with lawful demands**

9

We will provide assistance in response to a demand issued by an agency or authority with the appropriate lawful mandate and where the form and scope of the demand is compliant with the law. ***Each of our local operating businesses is advised by senior legal counsel with the appropriate experience to ensure compliance with both the law and with our own Principles.***

(Emphasis added.)

29.    In the 2017 Disclosure Report, the Company also published an update to the 2015 Legal Annexe ("2016 Legal Annexe") following an analysis completed in the spring of 2016. In the 2016 Legal Annexe the Company stated in relevant part:

This content was updated following analysis that was conducted in spring 2016.

Australia is a federation containing three separate types of legislation: Commonwealth, state and territory. This report focuses on the legal powers available to the Australian government and law enforcement agencies under commonwealth law.

**Real-time interception and disclosure powers**

**1.    Provision of real-time lawful interception assistance**

**Telecommunications Act 1997**

Carriers and carriage service providers (carriers), such as Vodafone, have legislative obligations under the Telecommunications Act 1997 (TA) to provide assistance to law enforcement agencies and national security agencies with the interception of individual customer communications (live communications) where authorised.

Section 313(3) of the TA requires carriers to give officers and authorities of the Commonwealth such help as is reasonably necessary for the purposes of: (i) enforcing the criminal law and laws imposing pecuniary penalties; (ii) assisting the enforcement of the criminal laws in force in a foreign country; (iii) protecting the public revenue; and (iv) safeguarding national security.

\* \* \*

Section 313(1) of the TA requires a carrier to do its best to prevent telecommunication networks and facilities from being used in, or in relation to, the commission of offences against the laws of the Commonwealth or the States and Territories. Examples of the kind of help law enforcement and national security agencies might request under section 313(3) of the TA include: (i) the provision of interception services; (ii) information from a carrier's information base, such as billing records; and (iii) assistance in tracing a call.

30.    The statements referenced in ¶¶ 24-29 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Vodafone had contravened Australian law by permitting customers to purchase pre-paid mobile phones without first verifying their identities; and (ii) as a result of the foregoing, Vodafone shares traded at artificially inflated prices during the Class Period, and class members suffered significant losses and damages.

## The Truth Begins to Emerge

31.    On January 10, 2018, post-market, the ACMA issued a press release entitled "Vodafone breaches verification rules for prepaid mobiles" disclosing that ACMA conducted an investigation into Vodafone Australia from December 1, 2014 to February 26, 2016 and from April 12, 2016 to April 28, 2016 ("Jan. 2018 Press Release"). The investigation revealed that between January 6, 2015 and January 6, 2016, the Company "***failed to verify the identity of at least 1,028 customers before activating their prepaid mobile services***." The press release stated in relevant part:

> This follows an ACMA investigation that found the company failed to verify the identity of at least 1,028 customers before activating their prepaid mobile services.

> The Telecommunications (Service Provider – Identity Checks for Prepaid Mobile Carriage Services) Determination 2017 (the Determination) requires all telcos to verify the identity of customers of prepaid mobile services before activating their services.

> 'Verifying the identity of prepaid mobile customers helps law enforcement and national security agencies obtain accurate information about the identity of customers for the purposes of their investigations,' said ACMA Acting Chair, James Cameron.

The breaches occurred between 6 January 2015 and 6 January 2016. They resulted from changes to Vodafone's IT systems that allowed customers to selfselect online that their identity had been verified in store, without any further check that this had actually occurred.

'Telcos must check that changes to their IT systems don't run the risk of contravening legal requirements,' Mr Cameron added.

32.    The press release also disclosed that the ACMA and Vodafone Australia entered into an enforceable undertaking for the Company to "***improve its processes for verifying the identity of prepaid mobile customers***" ("Undertaking"). The Undertaking stated in relevant part:

5.  On the basis of the documents and information obtained during the course of its investigation, the ACMA found that Vodafone Hutchison Australia Pty Limited ACN 096 304 620 (VHA) contravened:

(a) section 2.3 of the Prepaid Determination on at least 1,028 occasions in relation to at least 1,028 Prepaid Mobile Services which it supplied, because it activated those services without first complying with the rules set out in Parts 4 or 5 of that Determination; and

(b) sub-section 101 (1) of the Telecommunications Act on at least 1,028 occasions as it did not comply with the service provider rules that applied to it, namely the rules set out in the Prepaid Determination.

6. Vodafone accepts:

(a) the ACMA's findings about the contraventions of the Prepaid Determination as outlined in paragraph 5; and

(b) that there were material weaknesses in VHA's compliance control framework that allowed VHA to activate at least 1,028 Vodafone Prepaid Customers' Prepaid Mobile Services without first complying with the rules set out in Parts 4 or 5 of the Prepaid Determination.

33.    On this news, Vodafone's American Depositary Receipt price fell $0.21 or 0.66%, to close at $31.44 per share on January 11, 2018.

34.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## <u>PLAINTIFF'S CLASS ACTION ALLEGATIONS</u>

35.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Vodafone securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

36.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Vodafone securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Vodafone or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

38.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Vodafone;

- whether the Individual Defendants caused Vodafone to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Vodafone securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

41.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Vodafone securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Vodafone securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

42.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

43.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

44.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the

other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Vodafone securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Vodafone securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

47.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Vodafone securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Vodafone's finances and business prospects.

48.    By virtue of their positions at Vodafone , defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and

omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

49.    Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Vodafone, the Individual Defendants had knowledge of the details of Vodafone's internal affairs.

50.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Vodafone. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Vodafone's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Vodafone securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Vodafone's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Vodafone securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

51.    During the Class Period, Vodafone securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be

17

disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Vodafone securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Vodafone securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Vodafone securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

52.    By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

54.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.    During the Class Period, the Individual Defendants participated in the operation and management of Vodafone, and conducted and participated, directly and indirectly, in the

conduct of Vodafone's business affairs.  Because of their senior positions, they knew the adverse non-public information about Vodafone's misstatement of income and expenses and false financial statements.

56.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Vodafone's financial condition and results of operations, and to correct promptly any public statements issued by Vodafone which had become materially false or misleading.

57.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Vodafone disseminated in the marketplace during the Class Period concerning Vodafone's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Vodafone to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Vodafone within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Vodafone securities.

58.     Each of the Individual Defendants, therefore, acted as a controlling person of Vodafone.  By reason of their senior management positions and/or being directors of Vodafone, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Vodafone to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Vodafone and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

59.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Vodafone.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 14, 2018

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484

*Attorneys for Plaintiff*

**Submission Date**

2018-02-02 11:37:26

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.    I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Vodafone Group plc ("Vodafone" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Vodafone securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Vodafone securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Vodafone securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.

# Name

**Print Name**

Korry Pearl

# Acquisitions

**Configurable list (if none enter none)**

| Date Acquired | Number of Shares Acquired | Price per Share Acquired |
|---------------|---------------------------|--------------------------|
| 12/15/15 | 300 | 32.002 |

# Sales

# Documents & Message

**Signature**



**Full Name**

Korry Pearl



**VODAFONE GROUP PLC (VOD)**                                    **Pearl, Korry**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|------|------------------|------------------------|------------------------|
| 12/15/2015 | Purchase | 300 | $32.0020 |